UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J. ANTHONY MARKS, et al.,

      Plaintiffs

v.

SCHAFER AND WEINER, PLLC, et al.,

      Defendants.

_____/

Case No. 20-11059

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) DISMISSING CASE WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER
JURISDICTION AND (2) DENYING PLAINTIFF TMT, INC.'S MOTION TO DISMISS
AS MOOT (Dkt. 23)**

Following the Court's prior opinion and order granting in part and denying in part Defendants' motion to dismiss (Dkt. 21), the Court directed Plaintiff TMT, Inc. to show cause why this case should not be dismissed for lack of standing. See 3/31/21 Order (Dkt. 22). Instead of responding to the show cause order, TMT filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2) (Dkt. 23). For the foregoing reasons, the Court finds that TMT has not sufficiently alleged standing, dismisses the case without prejudice, and denies TMT's motion as moot.[1]

**I. BACKGROUND**

The full factual background is set forth in the Court's March 19, 2021 order granting in part and denying in part Defendants' motion to dismiss. See 3/19/21 Order (Dkt. 21). In relevant part, Plaintiffs J. Anthony Marks and TMT filed this attorney malpractice and breach of contract action against Defendants Schafer and Weiner, PLLC and several attorneys affiliated with Schafer and

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Defendants' response (Dkt. 24) and TMT's reply (Dkt. 25).

Weiner. Am. Compl. (Dkt. 4). Marks formed TMT in 2009 by merging several companies that he owned and operated into a single entity. Id. ¶¶ 10–12. This action stems from Defendants' representation of TMT in bankruptcy and insolvency-related matters. Id. ¶¶ 24–25. In 2010, First Merit Bank, the mortgagee of one of TMT's properties, requested that a receiver be appointed to oversee TMT's business operations. Id. ¶ 14. While operating under the receivership, TMT failed to pay federal payroll withholding/Federal Insurance Contributions Act (FICA) taxes in June, September, and December 2012, resulting in an unpaid tax obligation of $471,112.89. Id. ¶¶ 18–19. Part of this debt constituted "trust fund" taxes. Id. ¶ 20. As the Court explained in its prior opinion and order, trust fund taxes may be assessed as a trust fund recovery "penalty" against an individual officer or manager of the employer who is responsible for collecting or paying withheld income and employment taxes and willfully fails to collect or pay them. 3/19/21 Order at 2; Am. Compl. ¶ 20. Marks has been personally assessed with a trust fund recovery penalty. Am. Compl. ¶ 20.

In January 2013, First Merit informed Marks that it planned to wind down TMT through the receivership. Id. ¶ 22. Marks sought legal representation from Schafer and Weiner to prevent that action and for advice regarding other legal and financial issues. Id. ¶¶ 23–24. In February 2013, Plaintiffs and Defendants entered into a legal services agreement. Id. ¶ 25. Defendants filed a voluntary Chapter 11 petition on TMT's behalf in the United States Bankruptcy Court for the Northern District of Ohio. Id. ¶ 28. In July 2013, the Internal Revenue Service (IRS) filed in the bankruptcy proceeding a proof of claim totaling $471,112.89. Id. ¶¶ 30–31. Marks was concerned about his "potential personal liability" relating to the IRS claim, which he was told was the trust fund portion. Marks Aff. ¶ 8 (Dkt. 15-1). He understood that $260,000 was set aside to pay the trust fund portion of the claim. Id. According to Marks and TMT, Defendants assured them that

2

all issues relating to the payroll/FICA withholdings and the trust fund tax obligation had been paid or resolved through the bankruptcy action, which terminated in September 2014. Am. Compl. ¶¶ 35–37.

Meanwhile, the IRS assessed Marks with a trust fund recovery penalty for each of the three quarters in which TMT failed to pay payroll taxes. IRS Account Transcript (Dkt. 14-4). Marks stated that he did not know about these assessments until December 2019 when an IRS representative visited him at his home to tell him that he owed $206,207.63 in unpaid 2012 payroll withholding/FICA taxes. Am. Compl. ¶¶ 38–40; Marks Aff. ¶ 19 (Dkt. 15-1).

Marks and TMT brought this action in which they asserted attorney malpractice and breach of contract claims. Am. Compl. ¶¶ 48, 55. They alleged that, despite the accuracy of the IRS proof of claim, Defendants (i) failed to arrange payments for the full amount of the trust fund portion of the claim; (ii) neglected to resolve the trust fund tax obligation through the bankruptcy proceedings; (iii) advised Marks and TMT that the trust fund tax obligation had been resolved; and (iv) failed to advise Marks that he was personally liable for the unpaid trust fund taxes. Id. Marks and TMT claimed $206,207.63 in damages, which is the amount Marks has been assessed in the trust fund recovery penalty, in addition to related legal fees, costs, and penalties. Id. ¶¶ 49, 56.

The Court dismissed the breach of contract claims brought by both Marks and TMT on the ground that a complaint about whether attorney services were properly performed may be brought only as a malpractice claim. 3/19/21 Order at 18–19. It also granted Defendants' motion for summary judgment as to Mark's malpractice claim on the ground that Defendants represented TMT, not Marks in his individual capacity, and, therefore, Marks had no attorney-client relationship with Defendants. Id. at 8–12. The Court denied Defendants' motion for summary judgment as to TMT's malpractice claim because genuine disputes of material fact remained. Id.

The Court's opinion and order thereby left TMT's malpractice claim as the sole remaining claim. However, because it was not apparent whether TMT had made sufficient allegations as to whether and how it had suffered any injury from Defendants' alleged malpractice—as distinct from Marks's alleged individual injury—the Court had concerns regarding its jurisdiction to adjudicate the remaining claim. See 3/19/21 Order at 19 n.6; 3/31/21 Order (Dkt. 22). Specifically, the Court found that the elimination of Marks's claims made it uncertain whether TMT has suffered an injury in fact fairly traceable to Defendants' actions. 3/31/21 Order. The Court, therefore, issued an order directing TMT to show cause why this case should not be dismissed based on TMT's lack of standing. Id.

Rather than respond to the show cause order, TMT filed a motion to dismiss pursuant to Rule 41(a)(2). In this motion, TMT states that, following the Court's dismissal of Marks, it "reviewed its current tax liability as it relates to this litigation," and it "in good faith does not believe its damages surpass the $75,000 required to vest this Court with diversity jurisdiction." Mot. at 3. It requests that the court dismiss its remaining claim without prejudice. Id.

Defendants filed a response, in which they contend that TMT's motion represents an attempt to evade dismissal of its claim with prejudice—presumably so that it may file the claim in state court—reasoning that if the Court determines that TMT lacks standing, it should dismiss the claim with prejudice (Dkt. 24). Defendants request that the Court deny the motion and, because TMT cannot show that it has standing, they ask that the case be dismissed with prejudice. Id. at 5.

TMT filed a reply, asserting that it can establish that it has proper standing (Dkt. 25).

## II. ANALYSIS

The Court proceeds to address whether the allegations in the complaint are sufficient to show that TMT has standing to bring its malpractice claim and invoke this Court's jurisdiction—even

4

though TMT did not respond to the show cause order.  Determining whether jurisdiction to hear a case exists is the "first and fundamental question presented by every case brought to the federal courts." Caudill v. N. Am. Media Corp., 200 F.3d 914, 916 (6th Cir. 2000).  When jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  The Court concludes that TMT has not sufficiently alleged that it has standing.

**A. Standing**

Federal courts have constitutional authority to decide only "cases" and "controversies."  U .S. Const. Art. III § 2.  The requirement of standing "is a fundamental element in determining federal jurisdiction over a 'case' or 'controversy' as set forth in Article III of the Constitution." Morrison v. Bd. Of Educ. of Boyd Cnty., 521 F.3d 602, 608 (6th Cir.2008).

Constitutional standing under Article III has three elements.  First, the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (punctuation modified, internal citations omitted).  Second, "there must be a causal connection between the injury and the conduct complained of," meaning that the injury must be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court." Id. (punctuation modified).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (punctuation modified).

Because these elements are not "mere pleading requirements" but "an indispensable part of the plaintiff's case," they "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Id.  Accordingly, standing "must affirmatively appear in the record."

5

White v. United States, 601 F.3d 545, 551–552 (6th Cir. 2010) (punctuation modified). It "cannot be inferred," and it cannot be established by "naked assertions devoid of further factual enhancement." Id. (punctuation modified). TMT, as the party invoking federal jurisdiction, bears the burden of establishing the elements of constitutional standing. Lujan, 504 U.S. at 561. Standing is determined at the time the complaint is filed. Ohio Citizen Action v. City of Englewood, 671 F.3d 564, 580 (6th Cir. 2012).

TMT must allege an injury in fact, which is the "[f]irst and foremost" of standing's three elements. Steel Co, 523 U.S. at 103. The United States Supreme Court has explained that the requirement that an injury be "concrete and particularized" has two discrete parts. Spokeo, Inc. v. Robins, 578 U.S. 330, 334 (2016). First, concreteness requires that the injury be "real," rather than "abstract," and that it "actually exist." Id. at 340; see also Warth v. Seldin, 422 U.S. 490, 501 (1975) (explaining that the plaintiff's injury must be "palpable"). Second, particularization requires that the injury "affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1. The plaintiff must "personally [have] suffered some actual or threatened injury," rather than simply bring a generalized grievance. Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (punctuation modified); see also In re Capital Contracting Co., 924 F.3d 890, 897 (6th Cir. 2019) ("A particularized injury affects the party in a specific way (in contrast to a generalized grievance).").

TMT has not alleged facts sufficient to show that it has suffered an injury in fact. The amended complaint focuses on how Defendants' alleged mishandling of the bankruptcy proceeding harmed Marks, in the form of the trust fund recovery penalty that he was personally assessed, and it does not state how any injury TMT suffered is distinct or differentiated from the injury Marks suffered. For example, the amended complaint alleges that, despite the accuracy of the IRS proof of claim,

6

Defendants arranged for the payment of only a portion of the trust fund taxes. Am. Compl. ¶¶ 42–43. It states that, despite this action, Defendants assured Marks and TMT that the trust fund tax issue had been fully addressed and resolved through the bankruptcy proceedings. Id. ¶ 33. In addition, the complaint alleges that through these actions—which center on the trust fund taxes personally assessed against Marks—Defendants failed to exercise reasonable skill and thereby committed malpractice. Id. ¶ 49. Further, the relief that Marks and TMT seek is $206,207.63 in damages, which is the amount Marks has been assessed in the trust fund recovery penalty, in addition to related legal fees, costs, and penalties. Id. Allegations that relate to TMT—such as that Defendants failed to confirm the correct amount of the IRS proof of claim or that, as a "direct and proximate result of Defendants' actions," Marks and TMT continue to incur fees, see id. ¶¶ 43, 50—either refer only to an undifferentiated injury or are conclusory. The allegations do not contain sufficient factual content to establish that TMT was injured "in a personal and individual way." Lujan, 504 U.S. at 560 n.1. Because TMT has not alleged that it was injured personally and distinctly, it has not sufficiently alleged a particularized injury. And because the complaint contains only broad or conclusory statements regarding how Defendants' actions impacted TMT, it has not sufficiently alleged an injury that "actually exist[s]" and, therefore, is concrete, as opposed to abstract. Spokeo, 578 U.S. at 340.

In its reply brief in support of its motion to dismiss, TMT addresses—for the first time—the issue of whether it has standing. It asserts that although its current total federal tax liability of $479,214.48 was also assessed against Marks, it remains liable for the unpaid taxes. Reply at 2. In contending that it has suffered an injury in fact, TMT repeats the allegations in the amended complaint that Defendants did not arrange for the full payment of the trust fund taxes. Id. at 3. It also makes allegations that did not appear in the amended complaint. Specifically, it states that it

7

believes that Defendants should have arranged payments to priority taxes rather than unsecured creditors and that it has incurred additional penalties and interest on its IRS liability for all payments that went to unsecured creditors instead of the IRS. Id. at 3–4. And TMT states that it suffered harm "in the form of the attorney fees during the [bankruptcy] proceeding for the incorrect handling of the tax liability." Id.

A movant may not use a reply brief as the vehicle for raising new arguments. See United States v. Jerkins, 871 F.2d 598, 602 n.3 (6th Cir. 1989). Nor is a reply brief the appropriate vehicle for adding allegations to a complaint. See Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (explaining that the plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). But even considering the arguments in the reply brief, the statements are too tenuous and vague for the Court to determine that TMT has suffered an injury in fact that is concrete and particularized. The reply brief makes broad and general statements about how Defendants mishandled the bankruptcy, and it does not assert how Defendants' actions personally affected TMT. Indeed, TMT's statement that "[a]lthough [the total tax] liability was also assessed against Marks, TMT remains liable for the unpaid taxes" suggests an undifferentiated harm. Id. at 2.

Therefore, TMT has not alleged an injury sufficient to give rise to an adversarial stake in the outcome of this case. See Baker v. Carr, 369 U.S. 186, 204 (1962) (explaining that, to bring suit, a plaintiff must have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues" before the court). Accordingly, TMT has failed to properly allege standing for its malpractice claim.[2]

---

[2] Because the Court finds that TMT has not sufficiently alleged an injury in fact, it need not address whether TMT has established the other elements of standing.

## B. Dismissal Without Prejudice for Lack of Subject Matter Jurisdiction

Standing "goes to [a c]ourt's subject matter jurisdiction." Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 607 (6th Cir. 2007). If a plaintiff cannot establish constitutional standing, his or her claim must be dismissed for lack of subject matter jurisdiction. Id.

The United States Court of Appeals for the Sixth Circuit has consistently held that a dismissal for lack of subject matter jurisdiction, including a lack of constitutional standing under Article III, mandates a dismissal without prejudice. See. e.g., Thompson v. Love's Travel Stops & Country Stores, Inc., 748 F. App'x 6, 10–11 (6th Cir. 2018) (remanding to the district court for an entry of a dismissal without prejudice when plaintiffs did not allege a concrete injury and, as a result, lacked standing to maintain their suit); B. & V. Distrib. Co., Inc. v. Dottore Cos. LLC, 278 F. App'x 480, 487 (6th Cir. 2008); Pratt v. Ventas, Inc., 365 F.3d 514, 522 (6th Cir. 2004). Several other circuits have concluded the same. See, e.g., Univ. of Pittsburgh v. Varian Med. Sys., Inc., 569 F.3d 1328, 1333 (Fed. Cir. 2009) (noting that, based on the holdings of several circuits, "the law universally disfavors dismissing an action with prejudice based on lack of standing, and there is a strong presumption that such a dismissal is improper").

The rationale for this rule is that "[d]ismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case." Revere v. Wilmington Fin., 406 F. App'x 936, 937 (6th Cir. 2011). Thus, while Defendants contend that a dismissal for lack of standing would constitute an adjudication on the merits, see Reply at 2, "[t]he standing inquiry is not a merits inquiry," Gerber v. Herskovitz, 14 F.4th 500, 505 (6th Cir. 2021). Rather, "Article III standing is jurisdictional, and a federal court lacking subject-matter jurisdiction is powerless to render a judgment on the merits." Thompson, 748 F. App'x at 11; see also Holloway v. Brush, 220 F.3d 767, 778 (6th Cir. 2000) (stating that when a

9

court dismisses a case for lack of subject matter jurisdiction, "nothing has been litigated and decided") (punctuation modified). Moreover, a dismissal for lack of subject matter jurisdiction is typically without prejudice given the fact that "merely because one court does not have jurisdiction over a dispute does not necessarily mean that another court is precluded from properly exercising jurisdiction over the matter." Wilkins v. Jakeway, 183 F.3d 528, 533 n.6 (6th Cir. 1999).

Courts have recognized that, in "extraordinary circumstances," dismissal with prejudice based on a plaintiff's lack of standing may be appropriate. Thompson, 748 F. App'x at 11. For example, in the "unique" instance in which there is "no pleading defect to cure that would confer standing," dismissal with prejudice may be warranted. Stehrenberger v. JPMorgan Chase Bank, N.A., No. 2:12-cv-874, 2012 WL 5389682, at *6 (S.D. Ohio Nov. 2, 2012). This exception does not apply here. This is not a situation in which the standing defect is unlikely to be curable. The Court does not find that the allegations show that TMT was not injured—or that TMT could never properly plead that it was injured. Rather, it finds that the allegations are insufficient to show that TMT was injured. It may be that, with more detailed factual content, TMT can sufficiently allege an injury in fact.[3]

Because the Court finds that TMT has not sufficiently alleged Article III standing, it dismisses this case without prejudice for lack of subject matter jurisdiction. Accordingly, TMT's motion to dismiss pursuant to Rule 41(a)(2) is denied as moot.

---

[3] Dismissal with prejudice may also be proper when the plaintiff lacks standing in the sense that state law does not afford the plaintiff a right to recovery. B. & V. Distrib. Co., Inc., 278 F. App'x at 487–488, 488 n.7 (affirming the district court's dismissal with prejudice when the plaintiff lacked an individual right to recover under the state law governing his claims, and, therefore, "the very same flaws that defeated his claims in this case would continue to exist in any other forum in which he sought to pursue them"). And "in rare cases where a district court lacks jurisdiction," the court may dismiss a claim with prejudice "as a sanction for misconduct." Revere, 406 F. App'x at 937. These circumstances also do not apply here, and Defendants do not contend that they do.

## III. CONCLUSION

For the foregoing reasons, the Court dismisses the case without prejudice for lack of subject matter jurisdiction and denies TMT's motion to dismiss (Dkt. 23) as moot.

SO ORDERED.

Dated: March 23, 2022　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge